EXHIBIT A

FILED
August 29, 2022
CLERK OF THE COUR
MARION COUNTY
CF

| | |
|---|---|
| STATE OF INDIANA | ) IN THE MARION COUNTY SUPERIOR COURT |
| | ) |
| COUNTY OF MARION | ) CAUSE NO.: 49D04-2208-CT-025970 |

THE EXCELLENT THE EXCELLENT, )
RAJ K. PATEL, )
)
Plaintiff, )
v. )
)
ALPHABET INC. and GOOGLE LLC, )
)
Defendant. )

**Order on Plaintiff's Motion to Reconsider Denial of Return of Filing Fees**

Comes now the Court after having reviewed the Motion to Reconsider Raj. K. Patel's, ("Patel") Motion to Proceed in Forma Pauperis filed August 23, 2022. This petition was previously denied on August 2, 2022. The Petitioner, Raj K. Patel completed the proper paperwork and attached an affidavit under penalties of perjury that outlined his indigent financial situation. The Court finds that Patel is indigent and therefore entitled to have the filing fee returned to him.

Therefore, the Court having been duly advised, hereby orders that the filing fee previously paid by Patel be refunded by the Marion County Clerk in the amount of One Hundred Fifty-Seven Dollars and No Cents, ($157.00) payable to Raj K. Patel.

So Ordered this Twenty-Ninth Day of August 2022.

Cynthia J. Ayers, Judge
Marion Superior Court Civil Division Room IV

Distribution: All Parties of Record

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

New York, New York

| | |
|---|---|
| THE EXCELLENT THE EXCELLENT DOUBLE UNITED STATES BASIS OFFICERS RAJ K. PATEL, from his individual capacity, *Plaintiff*, | No. 26-4703 |
| v. | November 7, 2026 |
| THE UNITED STATES, *Defendant*. | Before: Jane A. Restani, Judge |

**PLAINTIFF RAJ K. PATEL MOTION FOR RECONSIDERATION OF THE OCTOBER 27, 2026 OPINION AND ORDER AND JUDGMENT, OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO AMEND AND MOTION TO TAX COSTS, FEES, AND JUST DAMAGES IN FAVOR OF PLAINTIFF PATEL AND AGAINST DEFENDANT THE UNITED STATES**

Plaintiff Raj K. Patel, of Zionsville, Indiana, proceeding *pro se*, respectfully moves, pursuant to USCIT R. 59(e) & -1(a) (applying the standard of Fed. R. Civ. P. 59(e)), and in the alternative under USCIT R. 60(b), for reconsideration of this Court's Opinion and Order and Judgment, both dated October 27, 2026, which dismissed Plaintiff's complaint for lack of subject-matter jurisdiction and denied as moot Plaintiff's Rule 5(d)(5) motion to compel acceptance of the complaint. Like the Defendant, Plaintiff Patel is also the United States and is a sworn United States basis officer, who along with thousands of other individuals, may invoke the name of the United States from his constitutional composition; therefore, this suit shows explicit jurisdiction under 28 U.S.C. § 1581(i). *See e.g.*, *McKinney v. U.S. Dep't of the Treasury*, 614 F. Supp. 1226 (CIT 1985) (dismissed for mootness). This motion is timely, having been filed within twenty-eight (28) days of the entry of judgment.

Plaintiff seeks an order (1) vacating or amending the Judgment under Rule 59(e); (2) directing that the complaint be accepted and docketed; (3) in the alternative, granting Plaintiff leave to amend the complaint to plead more specifically the jurisdictional bases identified herein; and (4) retaining and exercising jurisdiction over this action under 28 U.S.C. § 1581(i), together with the Court's full powers in law and equity under 28 U.S.C. § 1585.

## PART I. MATERIAL BACKGROUND

International trade is older than the Republic, and the Republic itself was born of grievances concerning trade and duties owed to a distant Crown. The Declaration of Independence lists among its grievances that The King had "cut off our Trade with all parts of the world." The Framers knew, better than any generation since, that commerce and liberty rise and fall together. *Cf. Camden Nominees, Ltd. v. Forcey*, [1940] Ch. 352, 366 (Ch. D.) (inducing tenants to withhold rents to Landlord is a crime; what a tenant-citizen cannot do than neither may his governmental delegate).

The first winter at Plymouth (1620-1621) nearly ended the Pilgrim experiment. The colony survived through a treaty of peace, mutual defense, and trade concluded between the Mayflower settlers and the Wampanoag Nation. The Pokanoket sachem Massasoit made the treaty, and the Patuxet Tisquantum ("Squanto"), who had learned English in the Atlantic trade world, taught the settlers to fish the coastal waters with bare hands and to cultivate the land.[1] The alliance was commerce; the survival of the colony was trade.

[1] William Bradford, *History of Plymouth Plantation* (1620-47) (narrating the 1621 treaty with Massasoit and the assistance of Tisquantum).

Farther sought, the point survives the speculation: the founders of the English colonies were commoners, and their descendants who founded the Republic deliberately forsook monarchy and hereditary title. The Constitution forbids the United States from granting titles of nobility and forbids officeholders from accepting them without the consent of Congress.[2] The Founders breached what their forebears would have called their bond of fealty to their "styled and patented" nobles — with thrones and crowns of their own — and vested sovereignty instead in the People. As Justice Wilson observed for the Court, the term "sovereign"[3] is unknown to the Constitution, and sovereignty resides in the people.[4] The old Witan — the king's council of nobles and bishops that advised on tolls and trade — has its heirs in Congress and in the courts; but in the Republic, the common-law People are themselves the council, and the courts hold Court on their behalf. *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987) ("Good faith is not a defense to the imposition of Rule 11 sanctions.").

Yet the new Republic inherited the fiscal architecture of the old. Customs duties on imports — The King's due — became the first and principal revenue of the United States, as Alexander Hamilton explained in The Federalist No. 12.[5] The

---

[2] U.S. Const. art. I, § 9, cl. 8 (Title of Nobility Clause).

[3] *Chameli Singh & Ors. vs. St. of U.P. & Ors.*, AIR 1996 SC 1051 ¶ 8 (India 1996). *Cf. Parmanand Katara v. Union of India*, AIR 1989 SC 2039 (India 1989) ("Article 21 of the Constitution casts the obligation on the State to preserve life.") (here, this court is a state institution under the American Bill of Rights' policy for "beneficent ends" for individuals first).

[4] *Chisholm v. Georgia*, 2 U.S. 419 (1793) (opinion of Wilson, J.).

[5] The Federalist No. 12 (A. Hamilton) (describing revenue from imports as "the most convenient branch" of national revenue).

Supreme Court has repeatedly traced the customs power to the sovereign's oldest revenue prerogative.[6] "Render therefore to Caesar the things that are Caesar's": the sovereign collects what belongs to the sovereign first, just as Caesar did. What changed in 1776 was not the duty, but the recipient. *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958) (Appellee compromised sworn duties is "not 'due to inability,'" so court action is proper because it has found "bad tendency" and "willfulness, bad faith, or any fault," of duty, *prima facie* and *per se*). *Trump v. Barbara*, 609 U.S. ____ (2026) ("'And 'in return for that protection,' those 'born within the dominions' owe the King a 'duty' of 'allegiance' (some times rendered 'ligeance'")) (citing 1 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 354, 354 & 356 (1765) (Blackstone)). *Id.* (citing *Inglis v. Trs. of Sailor's Snug Harbour in City of New York*, 3 Pet. 99, 120-1 (1830)). *See Marbury v. Madison*, 5 U.S. 137, 163 (1803).

In the Republic, the duties (including non-monetary duties) of trade flow to the common-law People themselves, through their elected Congress, and the interests of the sovereign and of the People are inseparable, for they hold Court together. THE RESTATEMENT (2D.) OF CONTRACTS § 205 (implied covenant of good faith and fair dealing set by federal common law) & *Id.*, cmt. e. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 54-5, 62 (1993) ("The rent represents a significant portion of the exploitable economic value of Good's home."). *Amish Devgan v. Union of India*, AIR ONLINE 2020 SC 930 ¶ 53 (India Dec. 7, 2020) ("Good faith" free from "hate speech," conduct should display fidelity...a conscientious approach in honouring the

---

[6] *Michelin Tire Corp. v. Wages*, 423 U.S. 276 (1976) & *Brown v. Maryland*, 25 U.S. 419 (1827).

values that tend to minimise insult, humiliation or intimidation...The important requirement of 'good faith' is that the person must exercise prudence, caution and diligence. It requires due care to avoid or minimize consequences."). *Cf. In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984).

The Republic's dealings with the Native nations — from Massasoit to Sitting Bull of the Hunkpapa Lakota — were from the beginning dealings in trade and treaty among sovereigns. 42 U.S.C. § 1981-2. The Commerce Clause of the Constitution reaches the Indian Tribes alongside foreign nations and the several States.[7] The Republic has honored that relationship imperfectly, but it was symbolized at the highest level of the government by **THE HONORABLE 31ST U.S. VICE PRESIDENT & PRESIDENT OF THE U.S. SENATE CHARLES CURTIS** of the Kaw Nation (1929–1933), who rose from the parrel sovereigns prairie to the Senate to the Vice Presidency — an integrated relationship between the Republic and the nations of the land.[8] *S. Ind. Propane Gas, Inc. v. Caffrey*, 56 N.E.3d 1216, 1221 (Ind. Ct. App. 2016) ("The absence of good faith is bad faith, but bad faith is not simply bad judgment or negligence...Rather, it implies the conscious doing of wrong because of dishonest purpose or moral obliquity...It is different from the negative idea of negligence in that it contemplates state of mind affirmatively operating with furtive design or ill will.") (quoting *Watson v. Thibodeau*, 559 N.E.Zd 1205, 1211 (Ind. Ct. App. 1990)).

---

[7] U.S. Const. art. I, § 8, cl. 3; *Cherokee Nation v. Georgia*, 30 U.S. 1 (1831); & *Worcester v. Georgia*, 31 U.S. 515 (1832).

[8] Biographical Directory of the United States Congress, Charles Curtis, 31st Vice President of the United States (1929–1933) (enrolled member of the Kaw Nation).

The People's representatives remain accountable on the money questions. *Cf.* U.S. Const. art. I, § 1 (legislative vesting clause with equitable powers). The 27th Amendment — proposed by the First Congress in 1789 and ratified in 1992, the last amendment to the Constitution — provides that no law varying the compensation of Members of Congress may take effect until an election has intervened.[9] *An Act for the relief of David Cook and Thomas Campbell*, ch. 2, 6 Stat. 6, Private Law (1791). Revenues, duties, and imposts have always been at the center of that accountability; candidates for Congress, including the majorities elected in the 1990s on fiscal and revenue questions, have answered to the People on taxes and trade. 15 C.F.R. § 301.1 (2026). Congress has likewise long passed private laws exempting persons and institutions from particular provisions of the revenue and customs laws where the exemption would improve society for all, with Ordered Liberty informing the queue of distribution. *Cf. An Act to provide for the free entry of one mass spectrometer for the Univ. of Washington*, Priv. L. No. 89-182, 79 Stat. 1404 (1965). *An Act to extend the term of credit for teas imported in the ship Argonaut; and to permit the export of goods saved out of the wreck of the snow Freelove*, ch. 43, 1 Stat. 373, Private Law (1794). *An Act for the remission of the duties on certain distilled spirits destroyed by fire*, ch. 53, 1 Stat. 378, Private Law (1794). 1 U.S.C. § 112

The history of Japan teaches the same lesson from the other shore: where trade is closed, freedom recedes. Japan's policy of seclusion (*sakoku*) lasted roughly two

[9] U.S. Const. amend. XXVII (proposed by the First Congress, Sept. 25, 1789; certified May 18, 1992).

centuries, not four; it was ended not by European discoverers but by the American expedition of Commodore Matthew C. Perry and the Convention of Kanagawa (1854), which opened Japanese ports to American trade.[10] The opening of Japan to commerce transformed both nations. After the catastrophe of the Second World War, the United States led in rebuilding an open trading system — the General Agreement on Tariffs and Trade (1947) — within which Japan, the Republic of Korea (bound to the United States by the 1953 Mutual Defense Treaty), and Germany rebuilt themselves into free and prosperous nations. Freedom is always on the line where international trade is happening. 19 U.S.C. § 2901. 6 U.S.C. § 349.

When the World Trade Center was destroyed by terrorists on September 11, 2001, the Nation rebuilt. One World Trade Center stands on that ground today — a declaration that trade, and the freedom that trade requires, will not be surrendered to terror. And only some of that trade is administered in this Court.

Equity has always walked with the merchant. Courts of equity protect the reasonable expectations of those who trade in good faith; as Justice Holmes observed, "the life of the law has not been logic: it has been experience."[11] The executive departments that administer the trade laws — Commerce, Labor, and the International Trade Commission — administer them against this deep background of merchant expectation. The Doha Declaration on the TRIPS Agreement and Public

---

[10] Convention of Kanagawa, United States–Japan, Mar. 31, 1854; General Agreement on Tariffs and Trade, Oct. 30, 1947, 61 Stat. A-11; Mutual Defense Treaty, U.S.–Republic of Korea, Oct. 1, 1953.

[11] Oliver Wendell Holmes, Jr., *The Common Law 1* (1881) ("The life of the law has not been logic: it has been experience.").

Health is of the same lineage: it affirms that trade rules are to be interpreted in a manner supportive of the right to health — securing, in the words of the Preamble of the Constitution, "the Blessings of Liberty."[12]

Plaintiff tenders this Material Background in utmost good faith as context for the Court's inquiry into the true nature of this action. Jurisdiction rests on the Constitution and the statutes enacted by Congress. Plaintiff's submission is that the history recounted above shows that actions concerning the administration and enforcement of the laws governing imports are not marginal to this Court's jurisdiction, but its very core.

## PART II. PROCEDURAL BACKGROUND

On June 18, 2026 and July 5, 2026, Plaintiff mailed to the Clerk of this Court a pro se complaint together with the forms required by the Rules of this Court. On both occasions the Clerk returned Plaintiff's submission without docketing it, on the stated ground that the Court lacked subject-matter jurisdiction. On October 16, 2026, Plaintiff filed his complaint (Dkt. No. 5-1) and his motion to compel acceptance of the complaint under USCIT R. 5(d)(5) (Dkt. No. 5).

On October 27, 2026, this Court issued its Opinion and Order and Judgment dismissing the complaint for lack of subject-matter jurisdiction and denying the motion to compel as moot. The Opinion reasoned that (1) Plaintiff bears the burden of establishing subject-matter jurisdiction; (2) residual jurisdiction under 28 U.S.C. § 1581(i) is "strictly limited"; (3) Plaintiff's claims seek damages in relation to trade

---

[12] Doha Declaration on the TRIPS Agreement and Public Health, WTO Doc. WT/MIN(01)/DEC/2 (Nov. 14, 2001), ¶ 4.

agreements that are not a law falling within the Court's residual jurisdiction; and (4) the Court could not conceive of any other provision conferring jurisdiction. The Opinion further noted, in footnote 2, that 28 U.S.C. § 1585 relates only to the powers of the Court once jurisdiction has been established and cannot itself be used to create jurisdiction.[13]

This motion follows. Plaintiff asks the Court to reconsider that dismissal in light of (A) the true nature of the complaint when construed, as the Rules require, to do substantial justice; (B) the ongoing administration and enforcement of the trade measures described below, including the U.S.–India COMPACT framework and its implementing executive actions; (C) the Court's equitable powers under 28 U.S.C. § 1585; and (D) the guarantees of Ordered Liberty secured to the common-law People of the United States under the original intent of the Constitution as broadened by the Declaration of Independence and the Fourteenth Amendment.

## PART III. LEGAL STANDARD

Subject-matter jurisdiction is the threshold question in every case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-5 (1998) & *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Here, Plaintiff Patel "may resort to jurisdiction under § 1581(i)" because plaintiff's remedies under 28 U.S.C. § 1581(a)-(h) are "manifestly inadequate" and truly is on-going legal injury is would create "extraordinary and

[13] *Compare* Dkt. 6 at 1-2 n. 1 ("Plaintiff T.2E Patel also thinks that the United States Court of Appeals for the Federal Circuit "*quashed*" the consideration of any filing bar outside its Circuit to contribute to any court's reasoning on whether it should issue a filing bar or not.") *with Patel v. United States*, No. 22-1131 (Fed. Cir. Feb. 11, 2022). *See also* Ord. 9 at 2, *Raj K. Patel v. Doe & Doe*, No. 3:23-cv-101 RLM-MGG (S.D. Ind. 2023) (citing *Patel v. United States*, No. 22-1131 (Fed. Cir. Feb. 11, 2022)).

unjustified delays caused by the exhaustion of administrative remedies."[14] *Bhullar v. United States*, No. 02-668, Slip Op. No. 03-36 * 18-9 (CIT 2003).[15] *See Miller & Co.*, 824 F.2d at 963; *see also Lowa, Ltd*, 561 F. Supp. at 446-47 (CIT 1983) ("[T]his court has subject matter jurisdiction under section 1581(i) of a cause of action...only when the relief available under section 1581(a) is manifestly inadequate or when necessary, because of special circumstances, to avoid extraordinary and unjustified delays

---

[14] Out of fealty for this honorable court, Plaintiff T.2E Patel, under the same Constitution, also used the option to sue unknown defendants by employing "John Doe and Jane Doe" and due service of process by publication. *The Excellent The Excellent Raj K. Patel v. Jane Doe & John Doe*, No. 49D04-2211-MI-040962 (Ind. Super. Ct., Marion Cnty. 2025) (Patel was a resident of Marion County then); *Raj K. Patel v. John Doe, Jane Doe, John Doe Jr., Molly Aoe, Colly Aoe, John Aoe, Volly Coe, & Unknown Inst.*, No. 32D01-2301-CT-1 (Ind. Super. Ct., Hendrick Cnty. 2023) (Plaintiff Patel graduated from high school in this county); & *Raj K. Patell v. St. of Indiana, Jailer [Gaelor], John Doe, & Jane Doe*, No. 32D03-2601-PC-2 (Ind. Super. Ct., Hendricks Cnty. 2026). Mind, it is impossible for these adversaries to not being present through intimately connected technologies under their command. *Compare Fourqurean v. NCAA*, No. 25-1187 * 28-9 (7th Cir. Jul. 16, 2025) (citing *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001) ("marketability for *NIL*" is essential in screening)) *with Students for Fair Admissions v. Harvard*, 600 U.S. 181 (2023) (Roberts, C.J., op.) (generally college applicants are tested for marketability under the review of likeability via application). *Patel v. Univ. of Notre Dame du Lac*, No 1:26-cv-636 (N.D. Ind. 2026). Mind you, by not providing the complete proofs, Defendant is much more influential than an entity may be inside a democracy and restricting Patel from also using the benefits of his dual citizenship with the Republic of India, a major trading partner, as a Oversees Citizen of India (OCI Card No. A4036436). India Const. art. 8. Defendant has acted completely against the interests of the United States set by President Trump and Congress, with the United States jointly with corporate entities in international trade and commerce. 22 C.F.R. § 101.1(c). *Compare* Pl.'s Patel Miss. R. Civ. P. 60(b)(6) Mot. for Relief from J. or Ord. 32 at 6-7, *Patel v. Univ. of Notre Dame du Lac*, No. 25CI1:23-cv-279-WLK (Miss. Cir. Ct., Hinds Cnty. 2023) ("THE [HONORABLE] INDIANA ATTORNEY GENERAL [TODD ROKITA] text messaged, on October 1, 2024, Plaintiff Patel that it is 'not my decision' to enroll [him] back into law school and 'might be able to' with actual authority.").

[15] *Bhullar*, No. 02-668, Slip Op. No. 03-36 * 18-9 ("This Court and the Court of Appeals for the Federal Circuit have held that a plaintiff may resort to jurisdiction under § 1581(i) only if the plaintiff's remedies under 28 U.S.C. § 1581(a) (h) are manifestly inadequate. ...("[T]his court has subject matter jurisdiction under section 1581(i) of a cause of action...only when the relief available under section 1581(a) is manifestly inadequate or when necessary, because of special circumstances, to avoid extraordinary and unjustified delays caused by the exhaustion of administrative remedies."); *Am. Air Parcel Forwarding Co., Ltd. v. United States*, 718 F.2d 1546, 1549-51 (Fed. Cir. 1983) (holding that the court did not possess jurisdiction under §1581(i) where the importers could have taken steps to qualify under §§ 1581(a) or (h), and remedies under those subsections would not have been inadequate), *cert. denied*, 466 U.S. 937 (1984); *U.S. Cane Sugar Refiners' Ass'n v. Block*, 69 C.C.P.A. 172, 683 F.2d 399, 402 (CCPA 1982) ("The delay inherent in proceeding under § 1581(a) makes relief under that provision manifestly inadequate and, accordingly, the court has jurisdiction in this case under § 1581(i).").

caused by the exhaustion of administrative remedies."). "'Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief-a merits-related determination.'" *Arbaugh*, 546 U.S. at 506 (internal citations omitted). The "party who brings a suit is *master to decide what law he will rely upon*, and...does determine whether he will bring a 'suit arising under' the...[Constitution or laws] of the United States by his declaration or bill." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (italics added). "Plaintiff bears the burden of establishing subject matter jurisdiction." *Cf. Barnes v. United States*, No. 25-43, Slip. Op. No. 25-132 * 3 (CIT 2025) (citing *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994))). *See also Arbaugh*, 546 U.S. at 506 ("Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter", whether in law or inherent equity) (citing 42 U.S.C. § 2000e-5(f)(3)). Plaintiffs need to prove neither "numerosity" nor that they are a person of "high interest." *Arbaugh*, 546 U.S. at 506 & *see generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (also discussing the casting of "prior restraint" may be a violation of the 1st & 5th Amendment). *Cf. Arbaugh*, 546 U.S. at 506 n. 4 (42 U.S.C. § 2000e-6(b), authorizing suits by the Government to enjoin "pattern or practice" discrimination found in Commerce) (cleaned up). A motion for reconsideration under Fed. R. Civ. P. 59(e), applicable to this Court through USCIT R. 1(a) and R. 59(e), may be granted to correct

a manifest error of law or fact, to account for newly discovered evidence, or to prevent manifest injustice. A manifest error is an error that is "plain and indisputable," such that the challenged ruling rests on an oversight or a misapprehension of the record or of the governing law. *See generally Arbaugh*, 546 U.S. at 506 (discussing limitations on dismissal for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted). *Arbaugh*, 546 U.S. at 506 (granting motions to dismiss may be "unfair and a waste of judicial resources"). But jurisdiction should not be denied where a federal right is fairly presented, unless the claim is so insubstantial as to be frivolous.[16] *Bell v. Hood*, 327 U.S. 678, 682-3 (1946). Dismissal of a complaint — particularly a pro se complaint, which must be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) & *Haines v. Kerner*, 404 U.S. 519, 520 (1972) — without consideration of a jurisdictional basis fairly presented by the record, and without leave to amend, is manifest injustice where the deficiency can be cured. *Foman v. Davis*, 371 U.S. 178, 182 (1962). For instance, because a court ruled the first time that it did not have jurisdiction does not mean *stare decisis* applies to this fundamental question even if the underlying facts or procedural history are presumed

[16] American jurisprudence distinguishes between "frivolous" and "sham" pleadings, with the latter explicating rejecting a subjective standard of interpretation. *Prof. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S. Ct 1920, 1928 (1993). Even a winning lawsuit is not "success[ful"] if it was brought in an anti-competitive way; the Defendant's and jointly with non-named party University of Notre Dame du Lac's removal certainly musters this because it attempted to sabotage Patel in his areas or his network. Op. & Ord. 63 at 4-5, *Ervin Equip. v. Wabash Nat'l Corp.*, No. 4:15-cv-104 (N.D. Ind. Jan. 31, 2017). Consequently, Appellee's removal, like ECF No. 30 at 1 n. 1, states what "legally unreasonable" for learned and experienced attorneys of a sophisticated corporation because adversaries knew that they acted "without probable cause" of success on the merits. *Prof. Real Est. Invs., Inc.*, 508 U.S. at 58. *See also* Ord. 4 at 1, *Patel v. Univ. of Notre Dame du Lac et al.*, No. 1:18-cv-3442-WTL-DML (S.D. Ind. 2018). *Constantine v. The Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) (a disabled law student recovered under Title II because she was able otherwise).

identical. ***Barnes,*** No. 25-43, Slip Op. No. 25-132 (citing *Barnes v. United States* ("*Barnes I*"), 49 CIT __, Slip Op. 25-65 * 1-2 (May 23, 2025). *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rhts. Org.*, 426 U.S. 26, 37 (1976)). Here, Patel properly pleads an "actual" and "real" legal "injury in fact," either "intangible" and/or tangible, that is a "invasion of privacy," linked to the 1st Amendment and the penumbras of the first nine (9) amendments, which the Defendant caused (if not prior to filing to the first litigation, but certainly after the Defendant United States denied writs of mandamus for *Marbury* ministerial duty to Take Care the law for took seeking and calling upon the protection of law) and favorable decision will allow Plaintiff Patel to be feel subjectively has been "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992) (cited by *Barnes*, No. 25-43, Slip Op. No. 25-132 * 5-7) (other internal citations omitted). *See* 22 C.F.R. §§ 101.1-.4.[17] *Friedman v. Kantor*, Slip Op. No. 97-112 * 1247 (CIT 1997) (courts have repeatedly held that "the terms of [the Government's] consent to

---

[17] Any affronts to human rights that implicate disrespect to the "likeness" of our international trading partners should be removed in the interest of protecting American interests and the "national commercial reputation of the United States." 22 C.F.R. § 101.1(c). Also, **HER EXCELLENCY THE PRESIDENT OF INDIA DROUPADI MURMU** has awarded **MICROSOFT CEO SATYA NADELLA** and **ALPHABET INC. & GOOGLE LLC CEO SUNDAR PICHAI** gold medals, the *Padma Bushan* ("Lotus Decoration"), the third highest civilian award, for their achievements in "Trade & Industry." http://padmaawards.gov.in/. Under USCIT R. 59(a)(1)(B), the Court may grant rehearing in a nonjury matter "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court," and those reasons are generally a "manifest error of law or mistake of fact." Slip Op. 26-23 at 3 (CIT 2026) (citing 11 Wright & Miller, Federal Practice & Procedure § 2804). The Federal Circuit likewise recognizes that a trial court "may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice." *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016), *accord*, *Ford Motor Co. v. United States*, 30 CIT 1587, 1588 (2006). Plaintiff acknowledges that reconsideration is not an opportunity "to re-litigate the case or present arguments it previously raised." *Totes-Isotoner Corp. v. United States*, 32 CIT 1172, 1173, 580 F. Supp. 2d 1371, 1374 (2008). Plaintiff therefore confines this motion to matters the Opinion did not address and to controlling law that the Opinion did not apply.

be sued in any court define that court's jurisdiction to entertain the suit.") (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "Defendants contend that a legal remedy is 'not made inadequate simply because appellant failed to invoke it with the time frame it prescribes,'" but, here, the injury is ongoing. *Cf. Bhullar*, No. 02-668, Slip Op. No. 03-36 * 9 (internal citations omitted). The set Constitutional system makes no exception of Plaintiff Patel, a natural-born citizen, the governmental work diverted from him. *Id.* at 13 ("arising out of import transactions" thus includes importing human capital, immigrants; a concept pluralized by dating apps, which is of Sovereign interests for some authorities). Thus, section 1581(i) was 'intended to give the Court of International Trade broad residual authority over civil actions arising out of federal statutes governing import transactions.'" *Friedman*, Slip Op. No. 97-112 * 1246 (citing *Conoco, Inc. v. United States Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1588 (Fed. Cir. 1994)). Also, unlike in *Friedman*, where the court decided to deny itself the transfer of want of jurisdiction to a federal district court because it too would lack jurisdiction, here, jurisdiction is proper in this court because of the multi-district nature, if well-pleaded and assuming the current district court and court of appeals are wrong, and it is the most familiar with the judicial review standards implicated by subject-matter jurisdiction, including but not limited to, 22 C.F.R. §§ 101.1 & -.3.[18]

[18] *John Roberts Mfg. Co. v. Univ. of Notre Dame Du Lac*, 152 F. Supp. 269 (N.D. Ind. 1957), *aff'd*, 258 F.2d 256 ¶ 14 (7th Cir. 1958) (citing *Brown Chemical Co. v. Meyer*, 139 U.S. 540, 544 (1891) ("'A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property.'")). *Cf. John Roberts Mfg. Co.*, 258 F.2d at 543 ("He has a right to the use of his own name. I will not do anything to deprive him of that or any other name calculated to benefit himself in an honest way, but I must prevent him from suing it in such a way as to deceive and

Under USCIT R. 59(a)(1)(B), the Court may grant rehearing in a nonjury matter "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court," and those reasons are generally a "manifest error of law or mistake of fact." *Id.* The Federal Circuit likewise recognizes that a trial court "may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice." *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016); *accord Ford Motor Co. v. United States*, 30 CIT 1587, 1588 (2006). Plaintiff acknowledges that reconsideration is not an opportunity "to re-litigate the case or present arguments it previously raised." *Totes-Isotoner Corp.*, 580 F. Supp. 2d at 1374. Plaintiff therefore confines this motion to matters the Opinion did not address and to controlling law that the Opinion did not apply.

The burden of proof that governs. The Opinion correctly states that Plaintiff bears the burden of establishing subject-matter jurisdiction. Dkt. 6 at 2. The applicable standard of proof is a preponderance of the evidence: the party invoking jurisdiction must establish the jurisdictional facts by a preponderance, and the court must give him the opportunity to do so before dismissal is entered. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). That burden, however, operates against a settled backdrop. Where no party has controverted the jurisdictional

defraud the public."). *Id.* at 544 (discussing "a reasonable, honest, and fair exercise" use of another's name).

allegations (and here the United States never appeared), the challenge is a facial one, and the court must take the allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993); *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). This Court applies the same rule when it raises jurisdiction on its own motion under USCIT R. 12(h)(3). *See* Slip Op. 14-61 at 2 n. 2 (CIT June 6, 2014) (court raising jurisdiction sua sponte "will assume the factual allegations as alleged by Plaintiff in its complaint and briefs are true") (citing *Cedars-Sinai*, 11 F.3d at 1583). Taken as true, the complaint alleges that the United States, through its administration of the import laws, keeps a defined category of medical technology from entering the country and from reaching Plaintiff. Compl. ¶¶ 9-10, 13-16, Claims 9-10. Those allegations describe action arising out of laws providing for the restriction and administration of imports under § 1581(i)(1)(C) and (D), and the preponderance standard is satisfied on the face of the pleading.

A separate and higher threshold governs dismissal of a federal claim for want of jurisdiction on the ground that it is insubstantial. The Supreme Court "ha[s] long distinguished between failing to raise a substantial federal question for jurisdictional purposes...and failing to state a claim for relief on the merits; only 'wholly insubstantial and frivolous' claims implicate the former." *Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (quoting *Bell*, 327 U.S. at 682-83). Constitutional insubstantiality for this purpose means "essentially fictitious," "wholly insubstantial," "obviously frivolous," or "obviously without merit," and "[t]he limiting words 'wholly' and

'obviously' have cogent legal significance." *Id.* at 45-46 (quoting *Goosby v. Osser*, 409 U.S. 512, 518 (1973)); *accord Hagans v. Lavine*, 415 U.S. 528, 536-38 (1974). The Opinion makes no such finding. Its footnote 1 recites findings by other courts in other cases, Dkt. 6 at 1-2 n.1, but jurisdiction over this complaint turns on this complaint, and the Opinion's operative holding is a characterization of the claims ("damages in relation to trade agreements"), not a finding that the import-restriction claims are fictitious or obviously frivolous. *Id.* at 4. Absent such a finding, "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Shapiro*, 577 U.S. at 45 (quoting *Bell*, 327 U.S. at 682).

Finally, even a court that concludes it lacks jurisdiction must consider transfer. "Whenever a civil action is filed in a court as defined in section 610 of this title...and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action...to any other such court in which the action...could have been brought at the time it was filed." 28 U.S.C. § 1631. This Court is a court "as defined in section 610." 28 U.S.C. § 610. The Federal Circuit treats the statute as imposing a "requirement that transfer be considered to cure jurisdictional defects," and has vacated a dismissal for the trial court's failure to consider it. *Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1374-75 (Fed. Cir. 2005). The Opinion did not consider transfer. Dkt. 6 at 4. If the Court adheres to its view that it lacks jurisdiction, Plaintiff respectfully requests in the further alternative that the Court amend the Judgment to transfer the action under § 1631 rather than dismiss it, so that the question of forum is decided on the merits rather than by default.

## PART IV. MOTION TO RECONSIDER DKT. ## 6 & 7 (DISCUSSION)

### A. The True Nature of the Complaint States Claims Within the Residual Jurisdiction of 28 U.S.C. § 1581(i)(1)(B)–(D), and the Dismissal Overlooked This.

The Court correctly observed that a party may not expand a court's jurisdiction by creative pleading, and that the Court must look to the true nature of the action in determining jurisdiction. *See Sunpreme Inc. v. United States*, 892 F.3d 1186, 1192 (Fed. Cir. 2018) & *Norsk Hydro Canada, Inc.*, 472 F.3d at 1355. But the true nature of this action, fairly read, is not merely "damages in relation to trade agreements." The complaint pleads that the United States, through its trade administration, blocks Plaintiff's access to imported medical technology — specifically, limb-enhancement and related medical technology available abroad — and that no lawful means of accessing that technology exists (Compl. ¶¶ 13-6, Claims 9-10). The complaint accordingly challenges:

1. tariffs, ***duties,*** fees, and other charges imposed on the importation of merchandise for reasons other than the raising of revenue, within 28 U.S.C. § 1581(i)(1)(B); *see Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019);
2. ***embargoes or other quantitative restrictions*** on the importation of merchandise ***for reasons other than the protection of the public health or safety***, within 28 U.S.C. § 1581(i)(1)(C); *see Zenith Radio Corp. v. United States*, 505 F. Supp. 216 (CIT 1980); and,
3. the administration and enforcement of those measures by the agencies of the United States charged with the customs and trade laws, within 28 U.S.C. § 1581(i)(1)(D). *See Miller & Co. v. United States*, 824 F.2d 961 (Fed. Cir. 1987).

Those are precisely the matters referred to in subparagraphs (A) through (D) of § 1581(i)(1). The Opinion's conclusion that the complaint seeks only "damages in relation to trade agreements" overlooked Claims 9 and 10, which challenge trade administration and customs treatment of imported medical technology, and the prayer's request for declaratory and equitable relief. That omission is the manifest error of law warranting reconsideration. Where a complaint fairly presents a federal right, the claim is not dismissed for want of jurisdiction unless the right is so insubstantial as to be frivolous. *Bell*, 327 U.S. at 682-3. Under the liberal construction owed to pro se pleadings, *see Erickson*, 551 U.S. at 94, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and *see also Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (*per curiam*), and under USCIT R. 8(f), which provides that "[a]ll pleadings shall be so construed as to do substantial justice," the complaint's references to the GATT, the USMCA, the Doha Declaration, the U.S.-China Economic and Trade Agreement, and the Trump–Modi COMPACT are best understood not as freestanding causes of action under those instruments, but as the international context in which the domestic import restrictions and their administration operate. *Norsk Hydro Canada, Inc.*, 472 F.3d at 1355.

Plaintiff does not contend that a private right of action arises directly from a non-self-executing agreement. Plaintiff contends that the challenged conduct — the exclusion of medical-like technology from importation and the refusal of lawful access — is itself action "arising out of" the tariff and trade laws of the United States within § 1581(i). *Erwin Hymer*, 930 F.3d at 1374 & *Miller & Co.*, 824 F.2d at 963. Nor is

any other subsection of § 1581 available to Plaintiff: because the Clerk twice refused to docket the complaint, no administrative or customs proceeding was ever initiated from which review under §§ 1581(a)-(h) could be sought, leaving the residual grant of § 1581(i) as the proper avenue for this action. *Auxin Solar, Inc. v. United States*, 698 F. Supp. 3d 1353, 1366 (CIT 2024) & *cf. Sunpreme*, 892 F.3d at 1192.

> In *Bell*, the Supreme Court addressed directly what a court must do when a complaint seeks recovery directly under the Constitution or laws of the United States: the federal court, "but for two possible exceptions later noted, must entertain the suit." *Bell*, 327 U.S. at 681-2. "Jurisdiction, therefore, is not defeated...by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Id.* at 682. "For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits, and not for a dismissal for want of jurisdiction." *Id.* The recognized exceptions — where the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction," or is "wholly insubstantial and frivolous" — do not apply here. *Id.* at 682-3. The complaint "does, in fact, raise serious questions, both of law and fact, which the district court can decide only after it has assumed jurisdiction over the controversy." *Id.* at 683. An opinion dismissing for want of jurisdiction must therefore address the federal right the complaint fairly presents; it cannot rest on the possibility that the claim might fail on the merits.

Monetary duties and customs charges. The Constitution vests in Congress the power "To lay and collect Taxes, Duties, Imposts and Excises." U.S. Const. art. I, § 8, cl. 1. Congress committed to this Court civil actions arising out of any law providing for "revenue from imports or tonnage" and for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," together with their administration and enforcement. 28 U.S.C. § 1581(i)(1)(A), (B) & (D). The Supreme Court has read that grant to reach customs charges well beyond the ordinary duty rate. In *United States v. U.S. Shoe Corp.*, 523 U.S. 360, 365-6 (1998), the Court held that a challenge to the Harbor Maintenance Tax belonged in

this Court under § 1581(i) because Congress directed that the charge be treated as a customs duty, and "[r]evenue from imports and revenue from customs duties are thus synonymous in this setting." Id. at 366. The three-judge panel of this Court that first decided that case, on which Judge Restani sat, reached the same conclusion: "In sum, jurisdiction is provided by 28 U.S.C. § 1581(i)." *U.S. Shoe Corp. v. United States*, 19 CIT 1284, 907 F. Supp. 408, 421 (1995), *aff'd*, 114 F.3d 1564 (Fed. Cir. 1997), *aff'd*, 523 U.S. 360 (1998). The Federal Circuit likewise treats duties and similar customs exactions as matters of constitutional and statutory dimension that the courts must hear on the merits. *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373-4 (Fed. Cir. 2000); *Int'l Bus. Machs. Corp. v. United States*, 59 F.3d 1234, 1236 (Fed. Cir. 1995). To the extent Plaintiff's complaint concerns the duties, fees, and other monetary charges that attach to the importation of medical technology, it arises under the laws § 1581(i)(1)(A), (B), and (D) commit to this Court.

Non-monetary customs measures. Customs law reaches more than money. Congress also committed to this Court actions arising out of laws providing for "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety," and the administration and enforcement of those laws. 28 U.S.C. § 1581(i)(1)(C) & (D). The customs laws also provide for the detention and exclusion of imported merchandise: when U.S. Customs and Border Protection fails to decide the admissibility of detained merchandise within 30 days, the failure "shall be treated as a decision...to exclude the merchandise." 19 U.S.C. § 1499(c)(5)(A). Medical devices offered for import may

be refused admission at the border. 21 U.S.C. § 381(a). These non-monetary measures (detention, exclusion, refusal of admission, and quantitative restriction) are the customs measures that keep the limb-related medical technology described in the complaint out of the United States. The Supreme Court has read the "embargoes" clause to reach governmentally imposed restrictions on the importation of merchandise, though not every regulation that affects imports. *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 183-5 (1988). A restriction that keeps a category of medical technology from entering at all is of the first kind.

The Federal Circuit has held that this Court may hear a constitutional challenge to duty rates under § 1581(i) and decide it on the merits, rather than dismiss it for want of jurisdiction. *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346 (Fed. Cir. 2010). That is the rule of *Bell v. Hood* applied in this Court. Plaintiff acknowledges the contrary considerations the Court must weigh: § 1581(i) is unavailable where another subsection of § 1581 is or could have been available, unless the remedy under that subsection would be manifestly inadequate. *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006) & *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008). An importer whose goods are excluded may protest under 19 U.S.C. § 1514(a)(4) and then sue under § 1581(a). But Plaintiff is a would-be consumer, not an importer of record. No entry was made, no merchandise was detained in his name, and no protest was available to him. For a person in Plaintiff's position, the protest remedy is not merely inadequate; it does not exist. That is the circumstance in which § 1581(i) applies.

**B. Sufficient Material Trade Law is Contractual and Embedded in Statutory Law, i.e. contract-in-law, which is Subject to Third-Party Enforcement by a Plaintiff Patel. 28 U.S.C. § 1582(2).**

International trade law is a form of laws of nations, especially when based on contracts. *Murray v. Schooner Charming Betsy*, 6 U.S. 64, 118 (1804).[19] Congressional statutes may not be effective against international trade law. *Id.* Many of these contracts are also enacted under applicable trade law statutes and may be enforced by third parties, such as the citizens of each signatory country.[20] UNIDROIT Principles of Int'l Com. Conts., Art. 1.7 ("Each party must act in accordance with good faith and fair dealing in international trade."). UCC §§ 1-304 and 1-302. *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146 (Fla. 2016) ("(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach."). *Galzaturificio Piceno v. Vivace Mode GmbH, Oberlandesgericht Düsseldorf [Higher Reg'l Ct.]*, Apr. 24, 1997, No. 6 U 87/96, CISG-online 385, ¶¶ 6-8 ("the provisions of the complementary applicable national law").

Therefore, policy from the Restatement of Contracts and the Uniform Commercial Code are persuasive and next to mandatory in interpreting these

[19] *Murray*, 6 U.S. at 118 ("It has also been observed that an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains, and consequently can never be construed to violate neutral rights or to affect neutral commerce further than is warranted by the law of nations as understood in this country.

[20] *Comm'r of Customs, Bangalore v. G.M. Exports*, 1 SCC 91 ¶ 23 (India 2016) ("This is for the reason that in such cases what is sought to be achieved by the international treaty is a uniform international code of law which is to be applied by the courts of all the signatory nations in a manner that leads to the same result in all the signatory nations.").

contracts-in-law, which some of, again, requires enactment by Congress. *Sutton v. United States*, 256 U.S. 575, 579 (1921). *Corus Staal BV v. Dep't of Com.*, 395 F.3d 1343, 1348-9 (Fed. Cir. 2005). 19 U.S.C. § 3512(a) & (c). *Xerox Corp. v. United States*, 423 F.3d 1356 (Fed. Cir. 2005) ("complementary statutes addressing different factual circumstances"). *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017-8 (Fed. Cir. 1995) ("the two administrative review schemes cannot be regarded as complementary."). *United States v. Washington Int'l Ins. Co.*, 177 F. Supp. 2d 1313 (CIT 2001) ("The...liability...is governed by the contractually agreed upon bond limit."). *Cf.* 28 U.S.C. § 582(2) (does not remove right to sue by non-United States; although Plaintiff T.2E Patel is of the United States). *Cf. Barnes*, No. 25-43, Slip. Op. No. 25-132 (plaintiff had access to product but could not afford the price).

**C. The Trump–Modi COMPACT Supplies the Contemporary Commercial Context That Confirms the True Nature of the Action.**

Plaintiff does not contend that the COMPACT itself creates a private right of action or is directly enforceable in this Court. *Sunpreme*, 892 F.3d at 1192. Plaintiff offers the COMPACT and its progeny as the contemporary commercial context within which the challenged import restrictions are administered — context that confirms that this action arises out of the tariff and trade laws of the United States for purposes of § 1581(i):

1. On February 13, 2025, THE HONORABLE PRESIDENT DONALD J. TRUMP and THE HONORABLE (THE EXCELLENT) PRIME MINISTER FOR HIS MAJESTY'S GOVERNMENT FOR THE REPUBLIC OF INDIA NARENDRA MODI issued a Joint Statement launching the "U.S.–India COMPACT (Catalyzing Opportunities for Military Partnership, Accelerated Commerce & Technology) for the 21st

Century," setting the bilateral goal of "Mission 500" — more than doubling two-way trade to $500 billion by 2030 — and announcing the negotiation of a multi-sector Bilateral Trade Agreement (BTA), with commitments to "increas[e] market access, reduc[e] tariff and non-tariff barriers, and deepen[] supply chain integration," including in medical devices. (*Joint Statement of the United States and India*, Feb. 13, 2025).

2. On April 21, 2025, the Office of the United States Trade Representative announced the Terms of Reference for the BTA, elevating the COMPACT into a formal negotiating roadmap with "additional commitments to ensure long-term benefits." (USTR, *Fact Sheet on the Bilateral Trade Agreement Terms of Reference*, Apr. 21, 2025).

3. On February 6, 2026, the United States and India announced a framework for an Interim Agreement regarding reciprocal and mutually beneficial trade, under which India committed to eliminate or reduce duties on U.S. industrial goods and a wide range of agricultural products, and both governments committed to address non-tariff barriers and customs and trade facilitation. (Joint Statement on the Framework for an Interim Agreement Regarding Reciprocal and Mutually Beneficial Trade, Feb. 6, 2026). The interim agreement remains unsigned, and the duty treatment of Indian-origin goods has changed since the framework was announced.

4. These measures are administered and enforced day-to-day by the Executive Branch — USTR, the Department of Commerce, and U.S. Customs and Border Protection — through tariff determinations, exclusions, and enforcement actions that directly govern what medical and related technology may enter the commerce of the United States, and on what terms. *Erwin Hymer*, 930 F.3d at 1374.

The Secretary of Commerce has acted directly on the category of goods at issue. On September 2, 2025, the Secretary initiated an investigation under Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, "to determine the effects on the

national security of imports of personal protective equipment (PPE), medical consumables, and medical equipment including devices." Notice of Request for Public Comments on Section 232 National Security Investigation of Imports of Personal Protective Equipment, Medical Consumables, and Medical Equipment, Including Devices, 90 Fed. Reg. 46,383, 46,383 (Dep't of Com. Sept. 26, 2025). The Secretary's published definition of "medical device" expressly includes "robotic and non-robotic prosthetics" and "orthopedic appliances." *Id.* at 46,384. Section 232 actions are subject to review in this Court. *See PrimeSource Bldg. Prods., Inc. v. United States*, 59 F.4th 1255 (Fed. Cir. 2023) & *Transpacific Steel LLC v. United States*, 4 F.4th 1306 (Fed. Cir. 2021). The Secretary's own action thus places limb-related medical technology squarely within the trade-administration scheme that § 1581(i)(1)(D) commits to this Court.

The Trump–Modi trade framework will also shape how the Executive Branch enforces these measures and in what order. Under the February 6, 2026 Joint Statement, the United States and India committed to "promptly implement this framework" and to continue negotiations on "remaining tariff barriers, additional non-tariff barriers, technical barriers to trade, customs and trade facilitation, [and] good regulatory practices." Joint Statement by the United States and India on Reaching a Framework for an Interim Agreement Regarding Reciprocal and Mutually Beneficial Trade, 2026 Daily Comp. Pres. Doc. No. 84 (Feb. 6, 2026); The White House, Fact Sheet: The United States and India Announce Historic Trade Deal (Feb. 9, 2026). As of this filing, the interim agreement has been announced but not

signed. Plaintiff does not ask the Court to enforce the framework. Plaintiff asks the Court to recognize that the agencies that enforce the trade laws (USTR, Commerce, and CBP) are setting their tariff, exclusion, and non-tariff-barrier priorities for Indian-origin and related goods with this framework in view, and that those enforcement choices are the "administration and enforcement" this Court reviews under § 1581(i)(1)(D).

Plaintiff's claims concern access to medical technology moving in international commerce between the United States, India, and China; this medical technology by humanist would unequivocally watch the on taking in film studies. The COMPACT framework is the operative scheme governing that commerce. An action challenging the administration and enforcement of these measures falls within § 1581(i)(1)(D). *Miller & Co.*, 824 F.2d at 963 & *Erwin Hymer*, 930 F.3d at 1374. Reconsideration is warranted so that the complaint may be evaluated against the enforcement scheme as it actually exists and is actually administered, rather than as an abstract claim for "damages in relation to trade agreements." *Bell*, 327 U.S. at 682-3 & *cf. Sunpreme*, 892 F.3d at 1192. In the alternative, Plaintiff respectfully requests leave to amend the complaint to plead specifically the statutory and administrative instruments of this scheme — the tariff proclamations, executive orders, exclusion lists, and administrative actions that restrict Plaintiff's access to the medical technology at issue — so that the jurisdictional basis of each claim appears on the face of the pleading. Leave to amend should be freely given where justice so requires. *Foman*, 371 U.S. at 182.

**D. The Court's Equitable Powers Under 28 U.S.C. § 1585, Exercised in Fairness, Require That the Complaint Be Heard.**

The Court's Opinion, in footnote 2, correctly held that § 1585 cannot create jurisdiction where none exists. *Star Sales & Distributing Corp. v. United States*, 663 F. Supp. 1127 (CIT 1986). Plaintiff accepts that holding and does not ask the Court to create jurisdiction. *Id.* Plaintiff's position is that once jurisdiction is properly founded under § 1581(i) for the reasons stated in Parts A and B, the full powers in law and equity conferred by § 1585 come into operation — including the power to issue writs of mandamus in aid of the Court's jurisdiction, and to grant declaratory and injunctive relief against the officers of the United States responsible for the administration of the trade laws. *Marbury*, 5 U.S. at 163 & *In re Debs*, 158 U.S. 564 (1895).

Fairness compels this result. Plaintiff's complaint was twice returned undocketed by the Clerk; the complaint was then dismissed on the pleadings without leave to amend; and the dismissal opinion did not address the alternative jurisdictional bases Plaintiff fairly raised (Claims 9-10; the § 1581 subsections identified in Plaintiff's Form 5 Information Statement, including §§ 1581(a), (b), (d), (f), (h), & § 1582). *Erickson*, 551 U.S. at 94 & *Haines*, 404 U.S. at 520. Equity will not suffer a wrong to be without a remedy. *Marbury*, 5 U.S. at 163. A pro se litigant, whose filings are entitled to liberal construction and to be "construed as to do substantial justice," USCIT R. 8(f), should not lose his day in court because his pleading recited the international framework before the domestic statute. *Haines*, 404 U.S. at 520. The Court should reconsider, accept the complaint, and allow the

action to proceed to a jurisdictional showing on a properly framed record. *Bell*, 327 U.S. at 683. *Cf. Terry v. Ohio*, 392 U.S. 1, 17 n. 15 (1968) ("enforcement of sumptuary laws...of reasonableness"; 4th Amendment protects against crafty "search").

**E. Ordered Liberty Is an Interpretive Principle That Supports Liberal Construction and Access to the Courts; It Is Not Offered as an Independent Source of Jurisdiction.**

Plaintiff Patel offers Ordered Liberty not as a substitute for a statutory grant of jurisdiction, but as the interpretive principle by which the statutory grant should be read. *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). The Supreme Court has long understood that the liberty protected by the Constitution is not a bare freedom from physical restraint, but includes "those privileges long recognized at common law as essential to the *orderly* pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The Due Process Clause of the 14th Amendment protects those "principles of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" — the concept the Court mirrors in the 5th Amendment and has called "Ordered Liberty." *Palko*, 302 U.S. at 325 & *see also Duncan v. Louisiana*, 391 U.S. 145, 148-9 (1968).

The People of the United States are a common-law people. They inherited — and through the Declaration of Independence's pledge of the unalienable right to the "Pursuit of Happiness," and through the 14th Amendment's protection of the privileges or immunities of citizens and the equal benefit of the laws, they broadened — the rich body of common-law rights of access to the courts, to a remedy for every wrong, and to the equal administration of the laws. *See e.g.*, 42 U.S.C. § 1981 (originally § 1 of the Civil Rights Act of 1866, extending to all persons the same right

"to make and enforce contracts, to sue, be parties, [and] give evidence" as is enjoyed by white citizens). *Runyon v. McCrary*, 427 U.S. 160, 168-72 (1976). Under this principle, a jurisdictional statute conferring on this Court exclusive authority over actions arising out of the trade laws should be construed liberally in favor of the common-law People's access to the forum Congress created for their trade grievances, not grudgingly. *Erickson*, 551 U.S. at 94 & *Haines*, 404 U.S. at 520.

Congress designated this Court as the exclusive forum for civil actions against the United States arising out of the tariff and trade laws. 28 U.S.C. §§ 1581-5. *Zenith Radio Corp.*, 505 F. Supp. at 216. Where a member of the common-law People of the United States presents a grievance that the administration of those laws deprives him of access to medical technology and of the lawful pursuit of his livelihood and happiness, Ordered Liberty requires that the grievance be heard and determined on the merits — or, at minimum, that he be told with precision which forum may hear it, and be given the opportunity to replead accordingly. "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury,* 5 U.S. at 163. Dismissal without leave to amend, of a liberally construed pro se complaint, denies that Ordered Liberty. *Haines*, 404 U.S. at 520 & *Foman*, 371 U.S. at 182. The Due Process Clause guarantees the opportunity to be heard "at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970), *accord*, *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The Articles of Confederation show why Congress later placed trade disputes in a single national forum. Article IV guaranteed that "the people of each State shall have free ingress and regress to and from any other State, and shall enjoy therein all the privileges of trade and commerce." Arts. of Confederation art. IV, ¶ 1 (1781). Yet Article IX withheld from Congress any power to make a treaty of commerce restraining the States "from prohibiting the exportation or importation of any species of goods or commodities whatsoever," *Id.* art. IX, and Article VI could only forbid state imposts that "interfere with any stipulations in treaties," *Id.* art. VI. The resulting patchwork of state restrictions was a principal reason for the Constitution's grant of commerce power to Congress. *See Gibbons v. Ogden*, 22 U.S. 1, 224 (1824) (Johnson, J., concurring).

The Court has explained that "[o]ne of the major defects of the Articles of Confederation, and a compelling reason for the calling of the Constitutional Convention of 1787, was the fact that the Articles essentially left the individual States free to burden commerce both among themselves and with foreign countries very much as they pleased." *Michelin Tire Corp.*, 423 U.S. at 283. The Framers responded "by committing sole power to lay imposts and duties on imports in the Federal Government," so that the Nation would "speak with one voice when regulating commercial relations with foreign governments." *Id.* at 285-6. Chief Justice Marshall observed that "few subjects were viewed with deeper interest or excited more irritation than the manner in which the several states exercised, or seemed disposed to exercise, the power of laying duties on imports," and that the

subject was placed "under the control of Congress" because "the interest of all would be best promoted" that way. *Maryland*, 25 U.S. at 439. Justice Johnson described the Confederation-era "conflict of commercial regulations destructive to the harmony of the States and fatal to their commercial interests abroad" as "the immediate cause that led to the forming of a convention." *Gibbons*, 22 U.S. at 224 (Johnson, J., concurring). The Court in *Woodruff v. Parham* traced the Articles' treatment of imposts in Articles VI and IX and concluded that "[t]he only allusion to imposts in the Articles of Confederation is clearly limited to duties on goods imported from foreign states." *Woodruff v. Parham*, 75 U.S. 123, 133-4, 136 (1868). The Court has also described the Framers' "central concern" as avoiding "the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation." *Hughes v. Oklahoma*, 441 U.S. 322, 325-6 (1979). *See also Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 515 (2019) ("Under the Articles of Confederation, States notoriously obstructed the interstate shipment of goods.") & *United States v. Int'l Bus. Machs. Corp.*, 517 U.S. 843, 874 (1996) (Kennedy, J., dissenting) ("the want of this power in the National Government was one of the great weaknesses of the Articles of Confederation"). Most recently, Justice Gorsuch noted that "[t]he Articles of Confederation granted the Confederation Congress authority to make commercial treaties, but no authority to restrain 'the legislative power of the respective States' to impose 'imposts and duties on foreigners.'" *Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026) (Gorsuch, J., concurring) (prelim. print at 299).

Other federal courts, including the Second Circuit, which sits where this Court sits, have treated the Articles as a serious source of historical meaning. The Second Circuit reversed the dismissal of claims arising under Article IX of the Articles and remanded for an evidentiary hearing on their meaning. *Oneida Indian Nation v. New York*, 691 F.2d 1070 (2d Cir. 1982). That case concerned Article IX's grant to Congress of "the sole and exclusive right and power of...regulating the trade and managing all affairs with the Indians," the same Native trade relationship described in Part I above. *Id.* The Second Circuit later affirmed dismissal on the merits after that hearing. *Oneida Indian Nation v. New York*, 860 F.2d 1145 (2d Cir. 1988). The Federal Circuit and this Court have likewise looked to Founding-era history in construing the constitutional limits on duties. *Cyprus Amax,* 205 F.3d at 1373-74; *Int'l Bus. Machs.*, 59 F.3d at 1236; & *U.S. Shoe*, 907 F. Supp. at 412-3.

Plaintiff offers this history only as interpretive background. The history confirms that the Founding generation saw access to "the privileges of trade and commerce" as a right of the people and saw national control of duties and import restrictions as its safeguard. The uniform national forum that Congress created in 28 U.S.C. §§ 1581-5 carries that design forward and should not be construed grudgingly.

**F. The Inherent Powers of a United States Judge are within the discretion of the Commissioned Judge and may issue writs "just for the heck of it," or to establish a different method of governance from Congress and the President, as the Supreme Court holds in *Oyama v. California*, 332 U.S. 633 (1948) against Congress's design of the Civil Rights Act of 1964 under Section 5 of the 14th Amendment.**

"Federal courts have both the inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *In re McDonald*, 489 U.S. 180, 184 (1989) (citing *In re Martin-Trigona,* 737 F.2d at 1261). Each time a plaintiff comes, the court's limited resources are used and burdened against the other interests presented before the court. *Dobbs v. Jackson Women's Health Org.*, No. 19-1392 * 31, 597 U.S. ___ (2022) (competing interests."). *In Re Taylor*, No. 12-1006 * 5 (Fed. Cir. Jun. 14, 2012). "Obviousness is a question of law based on underlying factual findings." *In re Gartside*, 203 F.3d 1305, 1315-6 (Fed. Cir. 2000). A writ of habeas corpus which is meant to order release the body of a detainee from a public or private custodian if the court finds illegal detention. *Ex Parte Bollman and Ex Parte Swartwout*, 8 U.S. 75, 95-6 (1807) (Marshall, J., op.); *Chin Yow v. United States*, 208 U.S. 8, 10 & 13 (1908); *Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 490 (1973) (citing *Sec'y of St. for Home Affairs v. O'Brien*, [1923] A.C. 603, 609 (H.L.)); and *cf. Dr. Asim Roy vs. Union of India & Ors.*, WPA 27134 of 2015 (Calcutta H.C. Feb. 26, 2025) (a writ petition for habeas corpus was not sufficient to allow Ph.D. from Trinity College to become effective in India). The jurisprudence of the writ of habeas corpus has not distinguished between the "body Natural" and the body Politic. *State v. Stark*, 5 S.C.L. 101, 103 (S.C. 1812) (Brevard, J., op.). The interests of international trade are only actualized when a free person purchases those goods or services. *Cf. Patel v. Univ. of Notre Dame*, No. 22-2251 (7th Cir. 2023) (Appellee violated good faith in litigation; Prevailing Party-and-Appellant-there Patel has recently filed to recover taxes under Fed. R. App. P. 39 &

the court's inherent equitable powers). The Sherman Anti-Trust Act, 15 U.S.C. §§ 1 *et seq.*, which applies to more than just college football players, also guides the judge to find in favor removing "restrain[]" on "trade or commerce." *Brown Univ.*, 5 F.3d at 658 (citing *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 687-8 (1978)) & *Eckart v. Davis*, 631 N.E.2d 494, 497 (Ind. Ct. App. 1994). Aside, mind you, this also proves that the United States and its institutions restrained and prevented, by withholding Plaintiff Patel's certified transcripts and "proofs," him from using his vested 68 credit hours which completes his juris doctor degree to allow him to respectfully participate in international trade, including from law firms.[21] *Gorman v. Univ. of Rhode Island*, 37 F.2d 7 (1st Cir. 1988) (citing *Goss v. Lopez*, 419 U.S. 565, 574-5 (1975)). Thus, this Article I court's equitable jurisdiction is not only directly from the United States Constitution which does not require enablement but also can be found in 28 U.S.C. § 1585 (referring to §§ 2241 & 2254).[22]

Under *In re McDonald*, it would not be improper for this court to issue a writ of habeas corpus in favor of Plaintiff Patel to remove all restrains, tangible and

[21] A Notre Dame Law School juris doctor has a trade marking that creates "special reputation" that denotes attendance in Notre Dame, Indiana, "transferred" by contract or operation of law, and is "of the same character." *Brown Chemical Co.*, 139 U.S. at 547-8. *Rene v. Reed*, No. 49A02-7-CV-433, 751 N.E.2d 736 (Ind. Ct. App. Jun. 20, 2001) ("the Students have a property interest protected by due process in the award of a diploma if all graduation requirements are met."). "Intangible grades are worthless without proof...[employer] increases compensation only after it receives a certified transcript" that includes a notation of graduation and that he has been award his degree, which is "an implicit part of the educational contract." *In re Kuehn*, 563 F.3d 289, 292 (7th Cir. 2009). *Olga Tellis v. Bombay Mun. Corp.*, AIR 1986 SC 180 (India 1986) (in context of being evicted; "right to life" extends beyond death sentence; nexus between "life" and deprivation of "livelihood" is "unimpeachable;" "Deprive a person of his right to livelihood and you shall have deprived him of his life;" makes "life impossible to live"). *Brookhart v. Ill. St. Bd. of Educ.*, 697 F.2d 179 (7th Cir. 1983) (a change in terms constitutes a deprivation of property).

[22] 28 U.S.C. §§ 2241 & 2254 do not explain what "State" refers to. So, not only are the sister states plainly included but also any authority that can prevail in restraining Plaintiff's body natural.

intangible, and set him at complete liberty. *Illinois v. City of Milwaukee*, 406 U.S. 91, 99-100 (1972). Being in custody at-large is not noticeable because there are virtually no geographical restrains or sitting behind bars.[23] **THE HONORABLE CHIEF JUSTICE OF THE UNITED STATES SALMON PORTLAND CHASE** materially opined, "The great writ of habeas corpus has been for centuries esteemed the best and only sufficient defense of personal freedom." *Brown v. Allen*, 344 U.S. 443, 512 (1953) (citing *Ex parte Yerger*, 75 U. S. 95, 97 (1868)). Trade law has the interests of keeping its consumers and laborers free. *R. v. Brown,* 2 All ER 75, 78 (1993) ("maiming" is illegal because the "bodily injuries" deprived the King of an able-bodied citizen) (citing *R. v. Coney*, 8 Q.B.D. 534, 539 (1882) (Cave J.)). Section 1631 instructs all judge not to leave a pro se plaintiff hanging in the world's name bureaucracy with about 4,000 U.S. Presidential appointees; so, issuance of a writ of habeas corpus, whether presiding from New York, Indianapolis, or another place, proper and pursues the interest of international trade laws. 28 U.S.C. § 256.

Notably, killing bald eagles "just for the heck of it" is irreligious not only for Native American religions but also civilly for the Constitution's state and society. *Cf.* Report & Recommendation, *United States v. Bertucci*, No. 8:09-cr-84 (D. Neb. Nov.

---

[23] *Kanu Sanyal vs. Dist. Mag., Darjeeling & Ors*, AIR 1973 SC 2684 (India Sept. 11, 1973). *A v. Sec'y of St. for the House Dep't* (Belmarsh case), 2004 UKHL 56. *Cf. Sheela Barse vs. St. of Maharashtra*, 2 SCC 96 (India 1983) (compel state to locate missing person). *Somerset v. Stewart* (1772). *Cf. Jones v. Cunningham*, 371 U.S. 236 (1963) ("writ will issue to unknown only some whereabouts are known"). *R v. Sec'y of St. for the Home Dep't, ex parte Khawaja*, [1984] AC 74 (applies to any executive authority, not just named party). *Kishore Samrite v. St. of U.P.* (18 Oct. 2012). *People ex rel. Tweed v. Liscomb* (1875) ("sheriff or any person having custody"). *Partlow v. Superintendent* (Ind. Sup. Ct. 202_) (writ is directed to custodian, not necessarily named). *Cf. Doe v. Garland*, No. 23-15361 (9th Cir. 2024) (name of immediate custodian required). *Hardley v. State*, 893 N.E.2d 740 (Ind. Ct. App. 2008). *In re: CBI v. Amit Shah* (Gujarat H.C. 2010). *Sanyal*, 1973 AIR 2684.

25, 2009), Dkt. 47 * 6 (some carnages of eagles are irreligious if killed "just for the heck of it"). While this federal court is, maybe, faced with a question of first impression, this court should "go a step further" because they may "just for the heck of it." *Aetna Cas. & Sur. Co. v. Williams*, 623 So. 2d 1005, 1021 (Miss. 1993). *Samaniego v. State*, No. 01A02-9505-PC-264, 682 N.E.2d 581 (Ind. Ct. App. 1997). The issue of the writ of habeas corpus will bring the **FORCE** of the United States to prevail in the administration of justice, even under the laws of war. *Contra. Limone v. Condon*, 372 F.3d 39, 52 (1st Cir. 2004) ("We conclude, therefore, that it would be ultra-crepidarian — and wrong — for us to exercise pendent appellate jurisdiction over the favorable termination issue just for the Heck of it."). U.S. Const. amend. III.

Lastly, healthy citizens in the environment are then able to orderly purse Happiness while the United States continues collecting import and export revenues. *Meyer*, 262 U.S. at 399. Plaintiff Patel offers *Buck v. Bell*, 274 U.S. 200, 206-8 (1927) as a historical comparison concerning judicial acceptance of governmental assertions that an intervention affecting the human body serves public welfare, not as a decision construing international trade law. *See Buck v. Bell*, 274 U.S. 200, 206-8 (1927). At the international-trade level, GATT Article XX(b) permits measures necessary to protect human life or health, but its introductory clause conditions the exceptions on the absence of specified arbitrary or unjustifiable discrimination between countries or disguised restrictions on international trade. *Buck*, 274 U.S. at 200-8 (Holmes, J., op. of Anglo-Saxon ancestry and Butler, J., dissenting of Irish and Roman Catholic descendent). Plaintiff Patel proposes this comparison to distinguish the asserted

public-welfare purpose of a medical-import restriction from the separate questions of its legal authorization and application; Plaintiff does not assert a private cause of action under GATT, which Congress has foreclosed. *See* 19 U.S.C. § 3512(c)(1). Nonetheless, a government's invocation of "public health" or "public welfare" warrants examination of the actual measure and its justification, not an assumption that the label resolves every legal issue. *Buck*, 274 U.S. at 207. *Buck* accepted Virginia's asserted welfare justification for compulsory sterilization, while GATT Article XX permits certain health-protective trade measures subject to requirements against arbitrary or unjustifiable discrimination between countries where the same conditions prevail, or disguised restrictions on trade. *Buck*, 274 U.S. at 206-8, GATT Article XX(b) and its introductory clause.

Interestingly, the Supreme Court was divided along religious lines on what they deemed "judgement," disability," "defective person," "socially inadequate." *Buck*, 274 U.S. at 205-7. Patel is currently trying to recover from Alphabet Inc., Google LLC,[24] Microsoft-Bing, and DuckDuckGo for burdens on the practice of his Hindu religion – *shraap*-ing ("cursing") – **HER MAJESTY QUEEN ELIZABETH II'S THE RIGHT HONORABLE (THE EXCELLENT) PRIME MINSTER FOR HER GOVERNMENT OF THE UNITED KINGDON AND NORTHERN IRELAND RISHI SUNAK**. *See e.g.*, *Patel v. Microsoft Inc.*, No. 1:26-cv-1474 (W.D. Wash. 202_). The major tech companies have burdened Plaintiff Patel's religion and this court would be proper in re-setting Plaintiff Patel

[24] *See* Ex. A, Ord. (Aug. 29, 2022), *T.E. T.E. Raj K. Patel v. Alphabet Inc. & Google LLC*, No. 49D04-2208-CT-25970 (Ind Super. Ct., Marion Cnty. 2023) (Ayers, J., op.) (Clerk shall refund Plaintiff pro se Patel his filing fee; Plaintiff Patel has viable claim so complaint will continue on the merits; and case dismissed on the papers).

to his desired Free state in the interest of removing any burden on the free exercise of sincerely held beliefs by a major government operative. 42 U.S.C. §§ 2000bb *et seq.* Ind. C. §§ 1-1-2-1 & 34-13-9 *et seq.* *Cullison v. Medley*, 570 N.E.2d 27, 30-1 (Ind. 1991) (An assault constitutes "a touching of the mind, if not of the body...Because it is a touching of the mind, as opposed to the body, the damages which are recoverable for an assault are damages for mental trauma and distress.").

Here, the obligation of issuance of writ of habeas corpus would be in the surrounding light of the Treaty of Paris (1783) and the relationship the United States maintains with HIS MAJESTY KING CHARLES III and its national anthem, to bring "Thy choicest gifts in store" for dutiful allegiance to Him and His Kingdom. Issuing the writ of habeas corpus will fulfill the cause of the Free world, "protect the limited resources of the judicial system[] and promote the interests of justice." R. 8(f). *Montgomery v. Davis*, 362 F.3d 956, 957 (7th Cir. 2004) ("A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice.") (*In re McDonald*, 489 U.S. at 184).

The judges of this court also ensure that international Commerce is available. Currently, the Defendant United States and the University of Notre Dame have evaded appearances in their closest federal district court, the United States Northern District of Indiana. *But see The Fair*, 228 U.S. at 25. This district is particularly important because both THE HONORABLE CHIEF JUSTICE OF THE UNITED STATES OF AMERICA AND CIRCUIT JUSTICE JOHN G. ROBERTS and THE HONORABLE ASSOCIATE JUSTICE OF THE U.S. SUPREME COURT AND THE CIRCUIT JUSTICE OF

THE U.S. 7TH CIRCUIT COURT OF APPEALS AMY C. BARRETT have either lived there or have financial and economic connections to this district. *Cf. John Roberts Mfg. Co.*, 152 F. Supp. at 276 ("The defendant, an educational institution with high public prestige and a chartered Indiana corporation by special Act of the Indiana Legislature…"). From law and experience, Defendant United States' and co-defendants-there have disregarded the jurisdiction of the Sherman Act, which applies beyond college football players, and are hoping that their *amicus* will keep unprotected the unlawful impact they have on international trade, especially with Canadians, which Defendant-United States is also the licensure of many interests with its co-defendants-there. *Regents of the Univ. of California v. Bakke,* 438 U.S. 265, 312 (1978) ("The freedom of a university to make its own judgments as to education includes the selection of its student body.").

## PART V. MOTION TO TAX FEES, COSTS, & JUST DAMAGES AGAINST DEFENDANT-THE UNITED STATES (DISCUSSION)

The American Rule comes to an exception when the court, under its inherent equitable jurisdiction, finds one of the parties acting "un-American," amongst other reasons. Fee-shifting is allowed without legislation approving, and costs and punitive damages are also ordered when a party has acted without warrant, frivolously, vexatiously, or unreasonably, including the certain invocation of damages revealed through money-currency but also contempt of federal law or court. 18 U.S.C. § 401. Here, the Defendant United States did not appear in any other court, as this court has partially found too. Dkt. 6 at 1 n. 1. Because of the larger number of filings that name it or one of its officers as a defendant, the United States acted in "bad tendency,"

"bad faith," and "frivolous" under the common law and "vexatiously" as Congress has intended in 28 U.S.C. §§ 1920 & 1927. *Cf. Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 n. 4 (1968) (citing 6 MOORE'S FED. PRACTICE 1352 (1966 ed.)) (§ 1927 and equitable powers because "delaying" was inherently "oppressive"). *Cf. Bhullar*, No. 02-668, Slip Op. No. 03-36 * 18 (other than USCIT R. 11 sanctions and other inherent powers, "In suits against the United States, "jurisdictional statutory requirements cannot be waived or subjected to excuse or remedy based equitable principles.") (citing *Mitsubishi Elecs. Am., Inc. v. United States*, 865 F. Supp. 877, 880 (CIT 1994) (citing *NEC Corp. v. United States*, 806 F.2d 247, 249 (Fed. Cir. 1986))).

The United States did not due its due diligence throughout the courts in this court's national territorial jurisdiction and have violated "equal justice under law." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) (O'Connor, J. dissenting) ("Punitive damages are a powerful weapon. Imposed wisely and with restraint, they have the potential to advance legitimate state interests. Imposed indiscriminately, however, they have a devastating potential for harm."). Like in *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986), where the Supreme Court held that the United States may not waive its right to appear in Article I courts, the United States is bound by Article VI, § 1 to appear under the continuing obligations of the Articles of Confederation, which were superseded by the ratification of our current Constitution order, as a matter of law and equity, since there is no conflicts of law. *In re Yamashita*, 327 U.S. 1, 72 n. 36 (1946) (the policy of the Bill of Rights means that all persons in the United States are subject to the

"benefit" of the laws and treaties of the United States now). Hence, the United States was sciential[25] and failed to represent the People's interests in Commerce which are affected by the jurisprudence of international trade law, which also compromised the agreement between the Federalist and the Anti-Federalist in have local state leaders executing national interests of the United States. *Barry v. Barchi*, 443 U.S. 55, 56 (1979) ("a property interest…the State also has an important interest in assuring the integrity of racing carried on under its auspices...", "duty of trainer...is sufficiently connected to the occurrence of tampering"; 14th & 5th Amendment Equal Protection Clause due). International trade law, as His Majesty King Charles I, decreed unified the English, Scots, and the Irish equally into international trade rights and privileges aided the development of their communities while receiving and keeping His Majesty's Government's elected members of Parliament and its constituencies shared under similar cause. Dkt. 5 at 2. *Brimmer v. Rebman*, 138 U.S. 78, 79-84 (1891) (unnecessary restrains on commerce; trade amongst common law nations which are part of the Commonwealth, and which are not).

Therefore, the United States should have appeared in court, beyond the United States Court of Federal Claims, over the course of eight (8) years of public ongoing prosecution. *Commodity Futures Trading Comm'n*, 478 U.S. at 833. Even in Article III courts, a United States Officer of competent jurisdiction in international law, is

[25] *United States ex rel. Schutte v. Supervalu Inc.*, 598 U.S. 739, 743 (2023) (Thomas, J., op.) (9-0) ("scienter"; scienter is judged on defendant's knowledge and "subjective beliefs," not what an objectively reasonable person may have known or believed), *rev'g*, 9 F.4th 455 (7th Cir. 2021) (the companies could not have acted "knowingly" if their actions were consistent with an objectively reasonable interpretation of the phrase "usual and customary"; "held that, because *other* people might make an honest mistake, defendants' subjective beliefs became irrelevant to their scienter.").

not allowed to evade court service nor waive court appearances without a pre-established licensed waiver because it would deprive Plaintiff Patel of his 5th & 14th Amendment liberties and property interests. *Id.* Therefore, these acts are in absence of good faith with overt actions acting in "bad tendency," as the Defendant United States cannot sponsor speech in violation of the People's rights, and with the separation of powers, the United States denied representation from the Article II executive branch and removed checks and balanced against Article III officers; plus, the Article II and Article I authorities of the Defendant United States ignored, most without responding, Patel's submission of Grievances to them. *Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.*, 856 F.2d 873 (7th Cir. 1988).[26] Mind you, the principles in equity to Take Care the Federalist No. 10 "diversity" interests, Congress has provided the President, with the Defendant United States, the United States Foreign Intelligence Surveillance Court, for the interest in oversight and countering human sciences against each new American's earned Natural Freedoms, which has overlapping interests for the "general welfare," as applied to Plaintiff Patel, with the U.S. Department of Health and Human Services Office of Minority Health and the U.S. Department of Commerce–Small Business Administration were stockholders. U.S. Const. Pmbl. Since Plaintiff Patel student status at the University of Notre Dame Law School became unclear, the Defendant United States should have appeared for equal protection under the Sherman Act which guides the vision of all

[26] *Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.*, 856 F.2d 873 (7th Cir. 1988) (provided no answer over and over again; $18,000 default judgment). *Id.* ¶ 23 (default judgement is greater, "attorney's fees" is "lesser").

Articles I, II, and III officers not to restrain international Commerce. *Fourqurean v. NCAA*, No. 25-1187 * 3, 8, & 13 (7th Cir. Jul. 16, 2025).

The extreme nature of the Defendant-United States' acts and omissions do not need more elaboration. *Standard Oil Co. of Ind. v. Missouri*, 224 U.S. 270, 286 (1912) (where the defendant has acted wantonly or perversely, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, damages may, in some jurisdictions, be assessed, even in civil cases, by way of punishment). *Bromcom Computs. PLC v. United Learning Trust & United Church Sch. Trust*, [2022] EWHC 3262 (TCC) (professional "courtesy"). *ABT Bldg. Prods. Corp. v. Complex Ins. Claims Litig. Ass'n*, 472 F.3d 99, 114 (4th Cir. 2006) (violating contractually obligated "good faith and fair dealing").[27] *Compare Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 817-18 (Ind. 2009) ("The common law of contracts governs agreements between private parties, except to the extent that it has been modified by legislation (like the Uniform Commercial Code.")) *with* ICLEO Statute, Ind. C. §§ 33-24-13 *et seq. and* Op. & Ord. 14 at 3, *Romero v. Brown*, 2014

[27] The United States since *Brown II* has ensured that restrains on a person or a person's property, and it has jurisdiction to all issues of all of Appellee's property, personal or real, regardless of how this Circuit would govern the vested education inside a person's faculty versus its proof, and began amplifying its role in international trade by the 1980's by "joint" ventures with various educational entities. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. ___ (2019) (Kavanaugh, J., op.). So, there is no confusion on what the Defendant expects and may Take Care. *ESPN Inc. v. Univ. of Notre Dame Sec. Police Dep't*, No. 71A05-1505-MI-381 (Ind. Super. Ct., St. Joe Cnty. Mar. 15, 2016), *accord*, 62 N.E.3d 1192 (Ind. 2016). *See Gibson v. Chouteau*, 80 U.S. 92, 99 (1872). *Cf. In re Kuehn*, 563 F.3d at 294 (Supreme Court of Wisconsin would hold that "student and colleges to be joint owners of the data reflecting grades, because that is how the educational contract is routinely understood") (internal citations omitted). *Id.* 563 F.3d at 293 ("The ninth circuit's conclusion is questionable. Universities in Montana are [statutorily] limited by both state and federal law in what they can do with a student's grades. Mont. Code § 20-25-515 says that a university "shall release a student's academic record...when requested by the student" and is governed by "the department of public health and human services.") (internal citations omitted). Fed. R. Civ. P 70(b) (Vesting Title).

WL 4494329, No. 2:14-cv-325-JVB-PRC (N.D. Ind. Sept. 11, 2014) (death "certificate" by another non-judicial governmental, such as Dep't of Health, agency is valid and enforced through comity). Farther sought, though, because the Defendant United States, the Supreme United States Sovereign which is all knowing and able, with its officers "jointly"[28] operating with Indiana's specially enacted and incorporated University of Notre Dame held Plaintiff Patel in despair, he, as the *Oyama*-Landlord and *Oyama*-Owner of his new residence of $3.2 million dollars in Zionsville, Boone County, Indiana was unable to fully attach and emotionally and intellectually appreciate the construction of the house and use all of its features. *Oyama,* 332 U.S. at 636 & 666 (14th Amendment Due Process means that the Government can allow natural-born citizens to hold property; the 5th Amendment agrees with original intent found in the qualifications of the Presidency; thus, conservatorship not allowed).

During the two-year constructing of his *Oyama*-house but also has *prevented* Patel from using his town's local, private airport to freely travel with international trade interests throughout the world. U.S. Const. amend. XIV. Preventing contractual Commerce is a tyranny felt equally, both vicariously lived and experienced, with the Pilgrims, made this psychological experience even more extraordinary. Mind you, Plaintiff Patel could also not comprehend the timeline of his younger brother's multi-million dollar foreign wedding so that he could have invited some of his friends, some of whom attended Emory University like Plaintiff Patel, his younger brother and his younger brother' now-wife; the humiliating part

---

[28] *Manhattan Cmty. Access Corp.*, 587 U.S. at ___.

was being involuntarily fat because of the trauma allowed by the Defendant, while the President was building domestically and disloyally foreign nation with Mounjaro, Ozempic, Wegovy, and Zepbound, and possibly with the friendly side effects. Despite their altruism, Defendants have not appeared yet to give verbiage to the Doha Declaration and other international law mentioned in the complaint. Mind you, the Indian Government is next to obliged by demanding these weight loss products because it aids in removal of "untouchability," which is a demand under their oath.[29] India Const. art. 17.

The Defendant United States can also answer the citizens of their country, by the "tendering" of duties and penalties. *See e.g., Dennis v. United States,* 341 U.S. 494 (1951) (cited in *State v. McLaughlin*, 212 N.E.2d 635, 638 (Ohio Ct. App. 1965) ("The 'bad tendency' test offers virtually no protection to freedom of expression.")). In trade law, "tendering" refers to an importer physically paying or delivering money to U.S. Customs and Border Protection (CBP). For example, under 19 U.S.C. § 1592, an importer must make a "prior disclosure" of an error and *tender* the actual loss of duties to avoid severe fraud penalties. This includes the things that cause loss of consortium in a property interest in international trade.

Overall, the United States should have appeared here so he may enjoy his right to sue appreciably with the opposing counselors depriving his liberty interests by not

[29] India Const. art. 17 ("'Untouchability" is abolished and its practice in any form is forbidden. The enforcement of any disability arising out of "Untouchability" shall be an offence punishable in accordance with law."). The Indian Supreme Court has said that this practice, while more specifically outlawed, is not unique to its regime and is found in different nomenclatures across the states in the United Nations.

appearing and sharing their perspective of the matter against the court, and even Plaintiff Patel, which is neglected from one branch of government. *Cf. The Fair*, 228 U.S. at 25.

Therefore, the court should and may order restitution for fees, costs, and just damages for the aggregate sum of $15,000,001.00 payable within 30 days at 22.9% interest per week and $5,000,001.00 payable within 2 days from issuance of favor order this court. *Pearle Vision, Inc. v. Romm,* 541 F.3d 751 (7th Cir. 2008) (court orders $646,521.99 in sanctions; deliberately withholds property, documents, or information; & "willfully failed to turn over files and willfully disregarded the court's order").

## PART VI. CONCLUSION

For the foregoing reasons, Plaintiff Patel respectfully requests that this Court:

1. Vacate or amend the Judgment entered October 27, 2026, pursuant to USCIT R. 59(e);
2. Direct that Plaintiff's complaint be accepted and docketed, or, in the alternative, grant Plaintiff leave to file an amended complaint pleading the jurisdictional bases identified herein;
3. Retain and exercise subject-matter jurisdiction under 28 U.S.C. § 1581(i)(1)(B)–(D);
4. Exercise the Court's full powers in law and equity under 28 U.S.C. § 1585 to do substantial justice;
5. From its Article III inherent authority, order taxing of fees and costs and just damages for equitable restitution aggregate total for restitution $15,000,001.00 payable within 2 days, after the issuance of the court's order, at 22.9% interest per week;
6. Issue damages with multiplier once, twice, or treble and punitive damages.

7. Order undisclosed settlement to respect the nature of privacy, and,
8. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Raj K. Patel
**Raj K. Patel**
4330 Strathmore Lane
Zionsville, IN 46077
(m) +1-317-740-8001 (cell)
rajp2010@gmail.com
Plaintiff, *pro se*

Dated: November 7, 2026

**DECLARATION OF RAJ K. PATEL IN SUPPORT OF RECONSIDERATION AND IN SUPPORT FOR TAXING FEES, COSTS, AND JUST DAMAGES REQUEST TO EXERCISE CIT LEGAL AND EQUTIABLE JURISDICTION, RESPECTIVELY**

**United States Court of International Trade | Court No. 26-4703**

I, Raj K. Patel, declare as follows:

1. I am the Plaintiff in this action and am proceeding pro se. The following statements concern my own understanding, intentions, and good faith.
2. A central concern of this case is access to limb-related medical technology protected by trade law. I bring the case, including that aspect of it, in good faith and seek the Court's consideration of the issues presented.
3. I have completed 68 credit hours of legal education. My decision to bring this case and seek reconsideration is based on that education, my learning and understanding, and the information and resources available to me. I offer this background to explain my good faith, not as an independent source of jurisdiction.
4. My purpose in bringing this case and seeking reconsideration, in both law and inherent equity, is to obtain judicial consideration of the issues I have raised, not to harass, cause unnecessary delay, or needlessly increase the costs of litigation.
5. I submit this declaration in support of my request that the Court reconsider dismissal and exercise jurisdiction under 28 U.S.C. § 1581(i), if the allegations and applicable law establish that jurisdiction, or alternatively permit amendment to plead the jurisdictional facts more specifically.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on: 11/7/2026 At: Indianapolis, Marion Cnty., Indiana

Signature: [signature] Raj K. Patel

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November, 2026, a copy of the foregoing Plaintiff's Motion for Reconsideration was served upon all counsel and parties of record through the Court's electronic filing system, and by first-class mail upon the Clerk of the United States Court of International Trade, One Federal Plaza, New York, New York 10278.

/s/ Raj K. Patel

Raj K. Patel, Plaintiff *pro se*